# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

TAMARA L. THOMPSON,

     Plaintiff,

*v*.                                     CASE NO. 08-CV-12444

COMMISSIONER OF                DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

     Defendant.

_____/


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]


## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. **REPORT**

### A. **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 6, 9.)

Plaintiff was 37 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 4 at 12, 54.) Plaintiff's relevant employment history includes work as a direct line leader or coordinator. (Tr. at 65, 87.) Among other tasks, this work required Plaintiff to lift auto parts weighing 10 to 15 pounds and carry them short distances. (*Id.*)

Plaintiff filed the instant claims on February 7, 2005, alleging that she became unable to work on August 8, 2004. (Tr. at 54, 259.) The claims were denied at the initial administrative stage. (Tr. at 39, 267.) In denying Plaintiff's claims, the Defendant Commissioner considered affective disorders, muscle/ligament disorder and fascia as possible bases of disability. (*Id.*)

On September 13, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the case *de novo*. In a decision dated November 21, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 9-19.) Plaintiff requested a review of this decision on November 26, 2007. (Tr. at 7-8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 7, 2008, when the Appeals Council denied Plaintiff's request for review. (Tr. at 2-4.) On June 9, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

## B.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

## C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that she is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.  Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff received treatment from Jeffrey R. Levin, M.D., for bilateral carpal tunnel syndrome, possible C6-7 radiculopathy, and sleep apnea.  (Tr. at 101-104, 170-71, 224-25.) Dr. Levin prescribed Vicodin, Flexeril, Motrin, Glucotrol, Albuterol, and Advair.  (Tr. at 105.) Plaintiff was also treated by Suresh Anne, M.D., for asthma. (Tr. at 180.)

Caroline Matthew, M.D., treated Plaintiff for asthma, bronchitis, migraine headaches, blood pressure management, diabetes, and back, neck, knee, and foot pain.  (Tr. at 108-13, 116-23, 161-69, 172-74, 176-78.)

Plaintiff suffered a blunt trauma injury to her left foot on August 9, 2004, when an H-Vac was dropped on her foot.  (Tr. at 184.)  After review of x-rays, Dr. James Ostrander of the Family Orthopedic Associates provided Plaintiff with a "Disability Release for Work" for four days after the injury, indicating that Plaintiff could return to work with a restriction to "sit down job only/no prolonged standing or no lifting or carrying" until September 13, 2004.  (Tr. at 190.)

Plaintiff also participated in rehabilitative therapy for neck and shoulder pain in August 2004 due to muscle spasms (Tr. at 192) and physical therapy for knee pain in September 2004. (Tr. at 179.)  In April 2005, Plaintiff underwent a psychological examination conducted at the request of the Disability Determination Service by Dr. Kelly McGiothin, Psy. S., and Marianne Georgen, Psy.D. (Tr. at 147-50.)

**E.      ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since August 8, 2004, although Plaintiff's earnings record reflected that Plaintiff earned $8,629.00 in 2005 and $10,524.00 in 2006. (Tr. at 14.)  At step two, the ALJ found that Plaintiff's carpal tunnel syndrome, residuals of a left foot injury, asthma, and a bipolar disorder were "severe" within the meaning of the second sequential step.  (Tr. at 15.)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (*Id.*)  At step four, the ALJ found that Plaintiff could not perform her previous work as a line coordinator.  (Tr. at 17.)  At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the regional and national economy.  (Tr. at 17.)

Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff could perform work as an assembler, inspector, and packer at the light exertional level and security monitor, assembler, and order clerk at the sedentary level.[2]  (Tr. at 18.)  Thus, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act.  (Tr. at 18-19.)

**F.      Analysis and Conclusions**

**1.      Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to perform light work.  (Tr. at 18.)  Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling

---

[2]The Secretary's regulations state that if a person is believed capable of undertaking light level exertional work, it is presumed that she is also capable of undertaking sedentary work. 20 C.F.R. § 404.1567(b).

of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

X-rays taken subsequent to Plaintiff's foot injury showed no fractures (Tr. at 185) and a bone scan of the ankles and feet performed on August 24, 2004, was "normal." (Tr. at 181, 183.) Similarly, on August 12, 2004, images taken of Plaintiff's left knee, ankle, and foot were all "negative." (Tr. at 187.) A letter dated August 13, 2004, from Dr. Matthew indicates that Plaintiff should "not lift or carry any objects due to neck and back pain with occurring muscle spasms," which appears to be directed toward an employer. (Tr. at 193.)

An EMG performed in July 2004 revealed "no electrophysiologic evidence of cervical radiculopathies or entrapment neuropathies in the left upper extremity including carpal tunnel syndrome." (Tr. at 207.) Although a physical examination by Dr. Levin revealed evidence of

carpal tunnel syndrome, it also revealed that Plaintiff suffered no pain on straight leg raising, and could walk on heels and toes without difficulty.  (Tr. at 170.)  In addition, an MRI performed in November 2004 was "normal" with "no evidence of herniation of the disk or any other abnormality."  (Tr. at 223.)  In late September 2004, Plaintiff was discharged from physical therapy.  The reasons given were "poor compliance" and "did not return to therapy."  (Tr. at 173.)[3]

Dr. Matthew referred Plaintiff to Susan M. Mosier-LaClair, M.D., in November 2004, who indicated that although Plaintiff did exhibit some "plantar fascitis, secondary to tight Achilles," "left insertional Achilles tendonitis," and resulting tenderness in her foot, her "crush injury should get significantly better for her, but it may never be normal or pain free"; she recommended that Plaintiff use orthotics and attend physical therapy.  (Tr. at 229.)

The DDS consulting psychologists determined that Plaintiff exhibited "BiPolar I Disorder, most recent episode depressed, moderate severity" and "No diagnosis" on Axis II, "sleep apnea, back and knee problems per the client's report," and "moderate psychological stressors, health and finances and interpersonal" issues and a "GAF [of] 55."  (Tr. at 149.)

After a review of Plaintiff's medical records, a DDS physician concluded that Plaintiff is moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting.  (Tr. at 128-29.)  The handwritten comments indicate that the above

---

[3]I note that the Commissioner's regulations provide for a denial of benefits where a claimant fails to follow prescribed treatment.  20 C.F.R. § 404.1530.  *See Young v. Califano*, 633, F.2d 469, 472-73 (6th Cir. 1980).  It has been held in this district that the failure to follow a prescribed course of treatment which could restore the ability to work is a proper ground for the denial of benefits.  *Hamilton v. Sec'y of Health & Human Servs.*, No. 91-CV-73589, 1992 WL 346304 (E.D. Mich. Aug. 25, 1992) (Rosen, J.).

limitations are due to bipolar disorder but he ultimately concluded that Plaintiff "can do unskilled work." (Tr. at 130.)

Plaintiff testified that she did do some work in 2005-06 "writing out checks" and "mak[ing] sure that . . . inventory been ordered right" for a cleaning service, that it was a "sit-down" job, and that it "never was a full-time job." (Tr. at 273-74.) Plaintiff also testified that she uses a cane, and that she uses a cart when she goes shopping "whether there's something in it or not." (Tr. at 276.) Plaintiff indicated she can lift "between five to seven pounds" comfortably and can lift ten pounds, but that is "really straining." (Tr. at 277.) She further indicated that she has trouble using her left hand due to carpal tunnel syndrome but that she is right-handed. (Tr. at 277.) Plaintiff testified that she does not do any shopping but when asked when she was last in a store, she indicated "the day before yesterday" because she "needed hygiene and stuff." (Tr. at 278.) She indicated that her family helps her with all chores, she is only able to walk for ten minutes at a time, she naps a couple times a day for up to thirty minutes, she has no hobbies, and does not drive. (Tr. at 279-80, 285.) Although there are no medical records indicating that Plaintiff treats with any psychiatrist, she testified that she was referred to one at McLaren Hospital. (Tr. at 286.)

The ALJ asked the vocational expert ("VE") a series of hypothetical questions, one of which was to assume a person of plaintiff's background who is able to lift as much as 20 pounds occasionally, whose ability to stand is limited to two hours in an eight hour period, but can sit for eight hours of the eight-hour workday, who did not have to crawl, kneel, etc., could not reach overhead, could not drive, could not operate foot or leg controls, is limited to simple, routine, and repetitive work, is able to tolerate superficial contact with co-workers but cannot confront or negotiate with them, and who needs to sit or stand when they want to do so. (Tr. at 288-90.) In

response, the VE identified 9,000 assembly, 4,700 inspector and 2,300 hand packing jobs consistent with these conditions. (Tr. at 290.)

After review of this evidence, and although there is some evidence to the contrary (Tr. at 193), I suggest that this record provides substantial evidence for the ALJ's findings. The first legal argument advanced by Plaintiff's counsel is that the ALJ erred by forming an inaccurate hypothetical that did not accurately portray Plaintiff's impairments. (Dkt. 6 at 6-15.) Plaintiff contends that the hypothetical did not address Plaintiff's limitations regarding her "difficulties in maintaining concentration, persistence, or pace." (Dkt. 6 at 9.) However, the actual "moderate" limitations found by the DDS physician that are relevant to concentration, i.e., ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances (Tr. at 129-29), were specifically included in the hypothetical. The hypothetical contemplated unskilled, simple, routine, and repetitive work, and required that the person would be able to sit or stand whenever they want to do so. (Tr. at 288-90.) Although Plaintiff argues that the VE confirmed that a person who missed work 20% of the time would not be employable (Dkt. 6 at 15, Tr. at 292), Plaintiff offers no evidence to show that Plaintiff would be unable to sit and work for 20% of the time. Instead, Plaintiff merely equates "moderate" with 20% and implicitly makes another logical leap in equating a 20% limitation in concentration with a 20% inability to work at all. Plaintiff offers no legal support for any such equation and I suggest it is logically flawed. Therefore, I find that specific evidence of record was properly included in the detailed hypothetical presented to the VE and I suggest that Plaintiff's argument to the contrary is not persuasive.

Plaintiff further argues with regard to Plaintiff's allegedly disabling physical impairments that the ALJ failed to properly evaluate the opinion of Dr. Levin. (Dkt. 6 at 16-19.)  Specifically, Plaintiff contends that Dr. Levin's "diagnoses of carpal tunnel syndrome, cubital tunnel syndrome, and possible cervical radiculopathy" should have been dispositive.  (Dkt. 6 at 18.)  I suggest that neither the existence of the tunnel syndromes nor other "possible" medical problems lacking any medical evidence equate with a finding of disability.  This is especially so where, as here, the medical evidence of record specifically addresses and discounts any radiculopathy.  (Tr. at 207, 223.)

Viewed in its entirety, I further suggest that the evidence in this case falls considerably short of that found sufficient in this circuit to uphold a finding of disability based upon mental impairment.  *See Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991) (claimant experienced "continuing and unrelenting episodes of violent and suicidal behavior, chronic anxiety and abnormal dependency with an inability to handle stress").  I suggest, instead, that the administrative record in this case is much more consistent with those cases in this circuit finding that allegations of disabling mental impairments failed to justify the award of benefits.  *See Hogg v. Sullivan*, 987 F.2d 328 (6th Cir. 1992); *Foster v. Bowen*, 853 F.2d 483 (6th Cir. 1988).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

 s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
CHARLES E. BINDER
Dated: December 15, 2008          United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Francis L. Zebot,  Mikel E. Lupisella, and the Commissioner of Social Security, and served on U.S. District Judge O'Meara in the traditional manner.


Date:  December 15, 2008          By_____s/Patricia T. Morris_____
                                  Law Clerk to Magistrate Judge Binder